IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 21, 2005

## TABATHA R. WHITE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-1140    Walter J. Kurtz, Judge**

_____

**No. M2004-02679-CCA-R3-PC - Filed October 19, 2005**

_____

The petitioner, Tabatha R. White, was convicted by a Davidson County Criminal Court jury of first degree premeditated murder, and the trial court sentenced her to life imprisonment. Subsequently, the petitioner filed a petition for post-conviction relief, claiming that (1) the trial court erred by failing to instruct the jury on circumstantial evidence and (2) that she received the ineffective assistance of trial counsel because her attorney failed to object to hearsay testimony, failed to request a circumstantial evidence instruction, failed to file pretrial motions requesting that the State reveal any plea bargain agreements it had made with the State's witnesses, and denied her the right to testify. The post-conviction court denied the petition, and the petitioner now appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Tabatha R. White.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

This case relates to the victim's being shot on February 29, 2000. The facts underlying the petitioner's conviction can be summarized as follows:

> Amelia Patterson testified that she, along with Pamela Johnson, Tara Johnson, and their cousin, Gerald Johnson, was

standing on the porch outside of Pamela's apartment on the night of the shooting. Pamela was on her cell phone talking to a person she referred to as "Tab" when she, referring to the victim, said, "[H]ere he go right here." Pamela told Gerald to bring the victim to her porch. Gerald approached the victim, who was walking just a few feet away, and "kind of like shook him up and brought him over to the porch." The victim "was refusing, but he finally came over there," and Pamela put him on the phone to speak with Tab, who wanted to "talk to him about her money." Patterson testified, "All I heard him say was that he was going to give her her money at 11:30." Patterson said the conversation ended, and "I guess they had told her that they was on their way. They was on the Interstate and she had hung up." Pamela informed her that their discussion concerned "ten-dollars ($10.00) worth of white," meaning cocaine.

The victim proceeded to walk away when Pamela again instructed Gerald to bring him back to the porch. The victim protested, explaining that he had to go heat up the bag of food that he was carrying. Pamela responded that he could heat it up at her house and, apparently accepting this offer, he began walking toward her porch. Patterson testified that the victim "didn't make it on the porch," however. At this moment, Tab, accompanied by a man, emerged from the parking area and asked, "where her mother-fucking money was." The victim was never given the opportunity to respond to Tab's demand as the man, who was approximately five or six feet away from the victim, pulled a gun from his pocket and shot him. From the witness stand, Patterson identified Tab as the defendant Tabatha White and the gunman as the defendant Leon Robins. Patterson testified that the police attempted to question Pamela Johnson the night of the shooting, but she "wasn't really cooperating" and was "acting like she was hallucinating."

. . . .

Pamela Johnson testified that the defendants were at her house "[e]ither one or two days before" the shooting, and Tabatha White gave the victim ten dollars to procure drugs. Although she had known White "[f]or about two or three years," it was her first encounter with Leon Robins. When the victim failed to return with either the drugs or the money, White was "mad" and instructed Johnson to be on the lookout for him. On the night of February 29, Johnson, standing in her doorway, spotted the victim and called White on a cell phone. Johnson then called the victim over and put

him on the phone with White. The phone cut off and the victim proceeded to leave. She called White back and had her cousin, Gerald Johnson, bring the victim back to the front of her house. Moments later, Robins shot the victim and White said "something to him about her money." Johnson testified that she thought the defendants were "just going to beat him up or something."

Detective Danny Satterfield of the Metro Police Department testified that, before trial, Pamela Johnson had told him that she was inside her house when the shooting occurred and could not identify the shooter. At Tabatha White's bond hearing, Johnson again stated that she did not witness the shooting and denied making phone calls to White prior to the shooting.

Saying that she had been scared, Pamela Johnson admitted to lying to the police on the night of the shooting by telling them both that she did not know who shot the victim and that Tabatha White had not been there, as well as lying at White's bond hearing. According to Johnson, White had called her and said "just keep the cool and . . . everything will be all right." At some point, however, Johnson changed her story and identified both defendants from photographic lineups, explaining that she "just had to tell the truth" and her "kids don't need to be having a momma that is getting in trouble for something she didn't do." On cross-examination, it was elicited from Johnson that the police "coerced" her regarding her testimony. However, neither the details of the alleged coercion, nor its alleged effect, was revealed.

. . . .

State v. Leon J. Robins, No. M2001-01862-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 238, at *2-7 (Nashville, Mar. 20, 2003), perm to appeal denied, (Tenn. Oct. 13, 2003). On direct appeal, the petitioner raised several issues, including the sufficiency of the evidence. This court affirmed the petitioner's convictions. Id.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that the trial court erred by failing to instruct the jury on circumstantial evidence and that she received the ineffective assistance of trial counsel. At the post-conviction hearing, the petitioner testified that she had never met the victim and that he did not owe her money. She had known Leon Robins because they were dating at the time of the shooting. The petitioner stated that she met with her attorney about ten times before the trial and that she was not satisfied with his representation. She stated that he gave her copies of discovery documents but that she had not understood them. The petitioner had been charged with first degree murder and aggravated kidnapping. Her attorney discussed the State's

evidence with her and had a private investigator involved in her case. She stated that her attorney told her that "everything looked good," that she did not have anything to worry about, and that she "had a better chance than Leon did." She stated that she had known Amelia Johnson was going to testify against her but that she had been unaware that Pamela Johnson was going to testify until about one month before trial.

The petitioner testified that she told her attorney she would testify if he needed her to but that her attorney told her there was no need for her to testify because the State did not have any evidence against her. She said that no one told her at trial that she had a right to testify. When asked if she had known that she had a right to testify, she stated, "Yeah, [my attorney] told me I could testify. [He] told me that I could testify." However, she later stated that the reason she did not testify was because "I didn't know I could." She stated that if she had testified at trial, she would have stated the following: On the night of the shooting, she was spending the night at her parents' home. Leon Robins telephoned and asked if the petitioner wanted to get some fresh air. The petitioner crawled out of her bedroom window and met Robins and Robins' three-year-old son. The three of them went to a game room on Dickerson Road and played some games. While they were at the game room, Pamela Johnson called the petitioner on her cellular telephone and asked the petitioner to drive over to Johnson's apartment to pick her up. The petitioner, Robins, and Robins' baby drove to Johnson's apartment, and the petitioner got out of the car. She saw someone lying on the ground and saw someone standing over the person. Robins told the petitioner to "get down," and the petitioner heard gunshots. She and Robins got back in the car and drove to the petitioner's apartment. The next day, the petitioner telephoned Pamela Johnson and asked what had happened. Johnson told the petitioner that the victim and Gerald Johnson had gotten into a fight over money. The petitioner stated that Robins did not have a gun on the night of the shooting. She said that three days before the shooting, she gave Pamela Johnson ten dollars in order to buy food and that Johnson gave the money to the victim.

The petitioner testified that she allowed her attorney to present an alibi defense, claiming that she was at her parents' home at the time of the shooting. She stated that her parents initially had been unaware that she had left their home on the night of the shooting but that she told them the truth before her trial. The petitioner acknowledged lying to her attorney by telling him that she had not gone to Pamela Johnson's apartment on the night of the shooting and by telling him that she had been at her parents' home all night. She stated that she lied to her attorney because he was a former police officer and she did not trust him.

The petitioner's trial attorney testified that he was appointed to represent the petitioner and that his records showed he met with her about eighteen hours over a fifteen-month period. He said that the petitioner's trial was his third or fourth jury trial but was his only first degree murder trial. The petitioner told counsel that she was not present at the scene of the shooting and that her parents could provide an alibi for her. Counsel interviewed Pamela Johnson, and Johnson told him that she had not seen the shooting. However, Johnson testified at trial that she had lied and had been present. Counsel said that absent the eyewitnesses to the shooting, much of the evidence against the petitioner

was circumstantial. However, counsel did not request a jury instruction on circumstantial evidence.

Counsel testified that the petitioner never expressed any problems with his representation. Regarding the petitioner's right to testify, counsel stated that he told her it was her decision. Counsel stated that the petitioner never told him that she wanted to testify, and the trial court did not hold a <u>Momon</u> hearing. Counsel acknowledged that Amelia Patterson and Pamela Johnson gave hearsay testimony at trial. However, counsel had been anxious for Johnson to testify because he believed Johnson would discredit Patterson's testimony. Counsel stated that he talked with the prosecutor in the case and that the prosecutor never told him that any "deals" had been struck with Pamela Johnson or Gerald Johnson in return for their testimony. Counsel also talked with Pamela Johnson's and Gerald Johnson's attorneys, and the attorneys told him that no plea agreements with the State had been made. However, after the trial, counsel learned that the State had allowed Pamela Johnson to plead guilty to kidnapping and receive a probation sentence.

On cross-examination, the petitioner's trial attorney testified that based on Pamela Johnson's testimony at the petitioner's bond hearing, he believed Johnson was going to be a good witness for the defense. However, Johnson later changed her story. Counsel acknowledged that if the petitioner had testified at trial, the State would have cross-examined her about her giving money to the victim and about her knowledge of him. He stated that he advised the petitioner not to testify because her father was a credible alibi witness and because he did not want to expose the petitioner to the State's cross-examination. He said that if the petitioner had testified, the State would have questioned her about her relationship with Robins and about her giving money to the victim. He stated that telephone records showed a telephone call between the petitioner's cellular telephone and Pamela Johnson's telephone. Counsel stated that he was afraid the State would be able to show that the petitioner was at the scene of the shooting, which was contrary to her alibi defense.

The post-conviction court denied the petitioner's request for post-conviction relief. Regarding counsel's request for a circumstantial evidence instruction, the trial court stated that this was not a circumstantial evidence case because there were eyewitnesses to the shooting, which is direct evidence of her participation in the crime. The post-conviction court held that the petitioner was confusing "the circumstantial evidence rule with the necessity of inferring intent from proven facts." Regarding the petitioner's claim that she received the ineffective assistance of counsel because her attorney failed to object to hearsay testimony, the post-conviction court held that some of the hearsay testimony would have been admissible under Tennessee Rule of Evidence 803(3) and that some of the testimony would have been admissible "as a prior consistent statement given the subsequent impeachment of Pamela Johnson." The court also held that counsel's failure to object to any hearsay testimony "was a reasoned decision and not ineffective assistance of counsel."

As to the petitioner's claim that her attorney was ineffective for failing to file a motion to discover any plea agreements the State made with State witnesses, the post-conviction court concluded that "[t]here was nothing to discover." The court also noted that during the trial, the jury knew that criminal charges were pending against Pamela Johnson and was instructed that "the jury should determine 'whether this witnesses testimony may be affected by self interest.'" Finally, as

to her complaint that she was not advised of her right to testify at trial, the post-conviction court acknowledged that no Momon hearing was conducted. However, the post-conviction court concluded that the petitioner's attorney had advised her of her right to testify and specifically discredited her testimony that she did not know of her right to testify at trial. The court held that the petitioner discussed testifying with her attorney and that she decided not to testify. Furthermore, the court concluded that had the petitioner testified, her testimony would have been "disastrous" for the defense.

Initially, we note that the petitioner has not included a certified copy of the trial transcript in the post-conviction record. During the post-conviction hearing, the following exchange occurred:

> [Petitioner's attorney]: Judge, I included the portions of the transcript, just pages from it, as attachments to the amended petition. And I also have a copy of [the] transcript with me today. It, too, is not a certified copy.

> THE COURT: We'll assume that the judges of the court of criminal appeals in the quiet sanctum that they work in could at least send somebody down two flights of stairs to round up the transcript if they thought it be necessary.

We would like to remind the petitioner and the post-conviction court that the petitioner carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997); William Robert Cantrell v. State, No. 01C01-9605-CC-00224, 1997 WL 230201, at *2 (Tenn. Crim. App. at Nashville, May 7, 1997). Nevertheless, because the transcript of the trial proceedings was filed with this court on direct appeal, we will take judicial notice thereof for purposes of the current appeal. Delbridge v. State, 742 S.W.2d 266, 267 (Tenn. 1987).

## II. Analysis

The petitioner claims that (1) the trial court erred by failing to instruct the jury on circumstantial evidence and (2) that she received the ineffective assistance of trial counsel because her attorney failed to object to hearsay testimony, failed to request a circumstantial evidence instruction, failed to file a pretrial motion requesting that the State reveal any plea bargain agreements with the State's witnesses, and denied the petitioner her right to testify.

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding

the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

## A. Circumstantial Evidence Instruction

The petitioner contends that the trial court erred by failing to give a circumstantial evidence instruction. However, the petitioner did not raise this issue on direct appeal. Generally, absent limited exceptions, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-106(g); see also State v. Townes, 56 S.W.3d 30, 35 (Tenn. 2003), overruled on other grounds by State v. Terry, 118 S.W.3d 355 (Tenn. 2003). In the instant case, the petitioner has not met any of the exceptions for determining that this issue is not waived. Accordingly, we conclude that the petitioner has waived this issue by failing to raise it during her direct appeal. See Dennis Ray Gilliland v. State, No. M2002-01865-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 959, at *15 (Nashville, Nov. 14, 2003), perm. to appeal denied, (Tenn. 2004); Milton Lee Cooper v. State, No. E2001-01527-CCA-R3-PC, 2002 Tenn. Crim. App. LEXIS 993, at *15 (Knoxville, Nov. 18, 2002), perm. to appeal denied, (Tenn. 2003). However, because the petitioner also claims that counsel was ineffective by failing to request a circumstantial evidence instruction, we will examine the issue in that context.

## B. Ineffective Assistance of Counsel

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address

both if the [petitioner] makes an insufficient showing of one component.

Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). On appeal, this court will neither second guess the tactical and strategic decisions of defense counsel, nor measure the representation by "20-20 hindsight." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

1. Hearsay Testimony

The petitioner claims that she received the ineffective assistance of counsel because her trial attorney failed to object to hearsay testimony given by Amelia Patterson and Tara Johnson, who both testified that the victim owed the petitioner money. She contends that without this testimony, the State would have been unable to establish a motive for the killing. The State contends that although the testimony was hearsay, the petitioner failed to show prejudice because Pamela Johnson testified about the victim's debt to the petitioner. We conclude that the petitioner has failed to demonstrate that she was prejudiced by any deficiency.

At trial, Amelia Patterson testified without objection that on the night of the shooting, Pamela Johnson had a telephone conversation with someone named "Tab." The following exchange then occurred:

> Q. Okay. Was [the victim] reluctant to come over to the porch?
>
> A. Well, no, he was refusing, but he finally came over there.
>
> Q. All right, and what happened when he got over to the porch?
>
> A. Pam was telling him to get on the phone, that Tab wants to talk to him about her money.
>
> Q. All right. Did he do that; did he get on the phone?
>
> A. Yeah, he got on the phone.

-8-

Q.    And could you hear what he was saying while he was talking on the phone?

A.    All I heard him say was that he was going to give her her money at 11:30.

Q.    Okay. Did he say how he was going to get the money or anything like that?

A.    No, he didn't.

Q.    All right. Now did you learn what this was all about?

A.    Yes, I did.

. . . .

A.    [Pamela Johnson] told me it was over ten-dollars ($10.00) worth of white.

Tara Johnson, Pamela Johnson's sister-in-law, also testified that she heard the victim's telephone conversation with Tab on the night of the shooting. She stated that she heard the victim tell Tab that he would pay her at 11:30 that night.

The petitioner claims that the State's witnesses were allowed to give improper hearsay testimony. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay statements are inadmissible unless they fall under one of the recognized exceptions to the hearsay rule. Tenn. R. Evid. 802.

With Amelia Patterson's and Tara Johnson's testimony, the State was trying to establish that the victim owed the petitioner money, thus establishing a motive for the crime. We agree with the petitioner and the State that much of their testimony was hearsay. However, we conclude that even if the petitioner's attorney rendered deficient performance by failing to object to the testimony, the petitioner has failed to show that she was prejudiced by the deficiency. Amelia Patterson testified that shortly after the victim's telephone conversation with the petitioner, the petitioner and Robins arrived at the scene, walked up to the victim, and the petitioner asked the victim "where her mother-fucking money was." Pamela Johnson testified that one or two days before the shooting, the petitioner, Robins, and the victim were at her apartment, and the petitioner gave the victim ten dollars in order for the victim to buy drugs for the petitioner. Pamela Johnson testified that the victim did not get the drugs for the petitioner, that the victim did not give the money back to the petitioner, and that the petitioner was mad at the victim. She said that just after the shooting, she heard the petitioner "say something to him about her money." Tara Johnson testified that a couple

of days before the shooting, the petitioner asked her to look for the victim because the petitioner had given the victim ten dollars. She also stated that just before the shooting, the petitioner told the victim that she "wanted her mother-fucking money." Marion Tucker, who lived in Pamela Johnson's apartment complex, testified that he witnessed the shooting and heard the petitioner ask the victim, "Where my ten-dollars ($10.00) at?" All of this testimony was admissible. See Tenn. R. Evid. 803(1.2) (providing that a party's own statement is admissible as an exception to the hearsay rule). Thus, even though the petitioner's attorney should have objected to the hearsay testimony, various witnesses gave admissible testimony concerning the victim's debt to the petitioner, and the petitioner has failed to show that she was prejudiced by her attorney's failing to object.

## 2. Circumstantial Evidence Instruction

Next, the petitioner claims that she received the ineffective assistance of counsel because her attorney failed to request that the trial court give a jury instruction on circumstantial evidence. She contends that a circumstantial evidence instruction was warranted because "[although] there was direct evidence in the form of testimony that Ms. White was present at the scene of the shooting, and asked the victim prior to his being shot where her 'mother-fucking money' was, this in no way establishes any intent to murder the victim." The State argues that because there was direct evidence of the petitioner's guilt, a circumstantial evidence instruction was not required. We conclude that a circumstantial evidence instruction was not warranted and that, in any event, the petitioner has failed to show that she was prejudiced by the trial court's failure to give the instruction.

A defendant has a "constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Accordingly, trial courts "should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." State v. Phipps, 883 S.W.2d 138, 150 n.20 (Tenn. Crim. App. 1994).

In this case, the jury heard several eyewitnesses testify that they saw the petitioner and Robins arrive together and approach the victim together. They then heard the petitioner ask the victim about her money, saw Robins pull out a gun and shoot the victim, and saw the petitioner and Robins flee the scene together. This was direct evidence of the petitioner's guilt. Although the trial court did not instruct the jury on circumstantial evidence, the trial court instructed the jury that a "defendant is criminally responsible as a party to an offense if the offense was committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible or by both." We believe this was a correct charge of the law. Moreover, given the evidence against the petitioner, she has failed to show how she was prejudiced by the State's failure to give the instruction. The petitioner is not entitled to relief.

## 3. Pretrial Motions

The petitioner claims that she received the ineffective assistance of counsel because her trial attorney failed to file pretrial motions requesting that the State disclose any plea agreements it had made with the State's witnesses. However, no witnesses other than the petitioner and her trial

-10-

attorney testified at the post-conviction hearing. Thus, the petitioner presented no evidence that any of the State's witnesses had entered into plea agreements with the State, possibly resulting in the witnesses being biased in favor of the State. The petitioner has failed to show that her attorney rendered deficient performance by failing to file the motions or that she was prejudiced by any deficiency.

### 4. Right to Testify

Finally, the petitioner claims that her trial attorney was ineffective because he "unilaterally" decided that she should not testify "despite the fact that Ms. White had communicated to him her desire to take the witness stand in her own behalf." The State contends that the trial court's failure to conduct a Momon hearing was harmless error. We agree with the State.

It is unquestionable that a criminal defendant has a fundamental, constitutional right to testify at trial. See Momon v. State, 18 S.W.3d 152, 161 (Tenn. 1999). Therefore, the right must be personally waived by the defendant. Id. In Momon, our supreme court outlined procedural safeguards to ensure that a defendant's knowing, voluntary, and intelligent waiver of the right to testify would be reflected on the record. Id. at 162. These safeguards include defense counsel's requesting a jury-out hearing to show that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. Id. Moreover, the trial court has a duty to ensure that a criminal defendant personally waives the right to testify. See id. at 169. A waiver of the right may not be presumed by a silent record. Id. at 162.

In this case, Momon's procedural guidelines were not followed. The petitioner did not testify at trial, and there is no evidence in the record to demonstrate that she personally waived her right to testify. See id. at 163. At the post-conviction hearing, the petitioner testified that she told her trial attorney she would testify if he needed her to. She then stated, "I would, if I had to, I would, I wanted to testify." According to the petitioner, her attorney told her that she did not need to testify because the State had no evidence against her. The petitioner later stated that she did not testify at trial because "I didn't know I could." The petitioner's trial counsel testified at the hearing that the petitioner never told him that she wanted to testify and that he advised her not to testify because he did not want to expose her to the State's cross-examination. However, he never stated that the petitioner personally waived her right to testify. Therefore, we conclude that the petitioner's fundamental right to testify was violated.

Nevertheless, the violation of this right is subject to constitutional harmless error analysis. See id. at 167. In conducting a harmless error analysis, the factors to consider include "(1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; [and] (4) the overall strength of the prosecution's case." Id. at 168. These factors "are merely instructive and not exclusive considerations." Id. "[T]he goal of harmless error analysis is to identify the actual basis on which the jury rested its verdict." Id.

The petitioner's trial attorney testified that the defense's theory of the case was that the petitioner and her codefendant were not present at the shooting. Leon Robins' sister testified at trial that Robins was at their mother's home at the time of the shooting, and the petitioner's mother testified that the petitioner was at her home. The petitioner's father testified that he went to bed about 8:00 p.m., that the petitioner was at his home at that time, and that she was there when he "got up." He also stated that if the petitioner had left his home while he was asleep, dogs would have barked. Despite this alibi testimony, the petitioner testified at the post-conviction hearing that she would have testified at trial that she snuck out of her parents' home and that she and Robins went to Pamela Johnson's apartment complex. When they arrived, the petitioner saw someone lying on the ground and heard gunshots.

The petitioner's denial of her involvement in the victim's shooting is important to her case. See State v. Vaughan, 144 S.W.3d 391, 411 (Tenn. Crim. App. 2003) (stating that "a denial by a criminal defendant that he committed the crimes with which he is charged can be of pivotal importance to his case"). However, in its order denying the petitioner post-conviction relief, the post-conviction court noted that the petitioner's proposed testimony would have been "extraordinary" given that her attorney described an alibi defense in his opening statements and given the fact that the petitioner's parents testified that she was in their home at the time of the shooting. Obviously, the post-conviction court did not accredit the petitioner's testimony. As to the second consideration, the petitioner's testimony was not cumulative. However, several eyewitnesses testified at trial that the petitioner was upset with the victim over money that the victim owed her, that they saw the petitioner arrive at the scene with Robins, that they heard the petitioner ask the victim about her money, and that they saw Robins shoot the victim. In light of this testimony, we believe that the State's case against Robins and the petitioner was strong. Therefore, we conclude that the violation of the petitioner's right to testify was harmless beyond a reasonable doubt. Thus, even if the petitioner's attorney rendered deficient performance by failing to request a Momon hearing, the petitioner has failed to demonstrate that she was prejudiced by the deficiency.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE